# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DIANA MILLER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:13cv00001 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

Plaintiff Diana Miller sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ("DIB") in January 2009, alleging disability since January 21, 2007.[2] (*PageID##* 251-55). She claims disability due to fibromyalgia; syringomyelia; prosthetic right knee; arthritis in back, knees, and arms; Bell's Palsy; hepatitis C; cryoglobulenemia; non-Hodgkins lymphoma in remission; anxiety; and depression. (*PageID#* 352).

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Plaintiff initially filed for benefits on December 6, 2006, alleging a disability onset date of October 1, 2005. (*PageID##* 248-50). She returned to work on December 14, 2006 and her application was rejected. (*PageID##* 309-10).

After various administrative proceedings, Administrative Law Judge ("ALJ") Robert Iafe denied Plaintiff's DIB application based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 74-89). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record (Doc. # 6), and the record as a whole.[3]

## II.  Background

### A.  Plaintiff's Vocational Profile and Testimony

Plaintiff was 44 years old on her alleged disability onset date, which defined her as a "younger individual" for purposes of resolving her DIB claim. *See* 20 C.F.R. § 404.1563(c); *see also, PageID##* 87, 268. Plaintiff has an Associate's Degree with an additional one year of college. (*PageID##* 87, 375). She has worked as an assembler of motor vehicles and as a driver. (*PageID#* 353).

Plaintiff testified that, at the time of the hearing, she was working part-time delivering cars as an "independent contractor." (*PageID#* 106). She stated she can turn

---

[3] Plaintiff did not file a Reply to the Commissioner's Memorandum in Opposition (Doc. #10).

2

down work if she is not feeling well enough. Plaintiff acknowledged that in the last year she has only turned down 8 to 10 delivery jobs. (*PageID##* 108-09). She stated she worked less than 10 hours per week. (*PageID#* 109).

### B. Vocational Expert Testimony

A Vocational Expert (VE) also testified at the administrative hearing. (*PageID##* 131-37). The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (*PageID#* 132). Considering Plaintiff's age, education, work experience, and RFC, the VE testified that a person with such limitations would be unable to perform her past relevant work. Nonetheless, the VE testified such a person could perform representative jobs at the light exertional level such as a bagger or silver wrapper (with approximately 6,000 jobs in the regional economy), as well as sedentary jobs such as a driver and document preparer (with 9,000 jobs in the regional economy). (*PageID##* 133-34). If the individual missed 3 or more days per month, she would not be able to maintain employment. (*PageID#* 134). The VE further testified that her testimony is consistent with the *Dictionary of Occupational Titles* ("DOT"). (*PageID#* 134.)

### C. Relevant Medical Opinions

Plaintiff relies on the opinion of her treating pain management specialist, Lita Mathai, M.D. Plaintiff treated with Dr. Mathai at the Dayton Pain Center since 2006. (*PageID##* 831-40, 1409-72, 1554-68, 1584-1613). Dr. Mathai treated her for thoracic vasculiasia, syringomyelia, displacement of thoracic disk, displacement of cervical disk,

3

hepatitis C, osteoarthritis of the right knee, fibromyalgia, and depression. (*PageID#* 1641). Dr. Mathai treated Plaintiff with pain medications, trigger point injections, S1 joint injections, and physical therapy. (*PageID##* 831-40, 1409-72, 1554-68, 1584-1613).

On April 29, 2011, Dr. Mathai completed interrogatories on Plaintiff's behalf. (*PageID##* 1639-46). Dr. Mathai reported that Plaintiff could occasionally lift/carry up to 5 pounds. (*PageID#* 1642). She was restricted in her ability to handle, finger, reach, feel, and push/pull. (*PageID#* 1644). Dr. Mathai reported that her findings were based on Plaintiff's history, physical, observations, and medical imaging. (*PageID#* 1645). Dr. Mathai opined that Plaintiff could not perform even sedentary work. (*PageID#* 1646). Dr. Mathai concluded that Plaintiff was unable to work due to her multiple impairments. (*PageID##* 1641-43).

To support Dr. Mathai's opinion, Plaintiff also relies on the opinion of Damian Danopulos, M.D. Dr. Danopulos evaluated her on behalf of the state agency on April 16, 2009. (*PageID##* 1481-93). On examination, Dr. Danopulos noted that Plaintiff was well developed and able to move around the exam room freely; she was able to dress and undress normally; her BP was 155/100; her lungs were clear; and her abdomen was soft and painless by palpation. Plaintiff's cervical and dorsolumbar spine had pain from pressure. Plaintiff also experienced a mildly decreased range of motion of her cervical spine, diminished strength in her right upper extremity, and reduced range of motion of her right knee. (*PageID##* 1486, 1490-91, 1493). Squatting and rising from squatting was normal. Plaintiff's lumbar spine motions were painless; her toe and heel gait was

4

normal; and no gait abnormality was found. Based on MRIs, it was noted, "[s]he suffers from localized Syringomyelia in the lower thoracic spinal cord which does not produce, so far, progressive myelopathy and neither blockage of the flow of the cerebral spine fluid, so far." (*PageID#* 1487). Dr. Danopulos noted that, based on MRIs, she had multilevel broad based disc bulging in the cervical spine and thoracic spine, and she had severe right and left foraminal stenosis and mild to moderate central canal stenosis at C6-C7. (*Id.*).

Dr. Danopulos diagnosed Plaintiff with the following: 1) cervical spine chronic pain with moderately severe arthritic changes; 2) dorsal spine minor to moderate arthritic changes; 3) right knee total knee replacement surgery done in October 2008, with slightly restricted motions and slight swelling; 4) right shoulder arthralgias; 5) poorly controlled blood pressure; 6) history of Syringomyelia involving the lower thoracic spine cord, without producing any neurologic pathology; 7) history of hepatitis-C without hepatomegaly; 8) history of Bell's Palsy in the past without any neurologic sequel; 9) history of chronic constipation without any abdominal discomfort or pain by palpation; 10) needing Synthroid supplemental therapy; 11) history of bilateral carpal tunnel syndrome, without clinical evidence of thenar muscle atrophies; and 12) depression, with anxiety neurosis. (*PageID##* 1488-89).

Dr. Danopulos opined that Plaintiff's ability to do any work-related activities is restricted considerably from her moderately severe cervical spine arthritic changes, plus her dorsal spine mild to moderate arthritic changes, her recent right knee total

5

replacement which triggers some limping, and her poorly controlled hypertension. (*Id.*). He also stated that her Syringomyelia, her history of cryoglobuliminemia, her history of non-Hodgkin's lymphoma, and her complaints of fibromyalgia were also additional issues. (*PageID#* 1489).

The Commissioner relies on the opinion of H. C. Alexander III, M.D., a rheumatologist who testified as an impartial medical expert at the administrative hearing. (*PageID##* 116-31). Dr. Alexander testified that he had treated and diagnosed fibromyalgia since 1969. He stated that fibromyalgia is a subjective pain syndrome and that "the pain is real, in both my medical opinion and supported by scientific evidence. The response to the pain is the issue." (*PageID#* 122). Dr. Alexander testified that in Plaintiff's case, there is no evidence of limitation of motor function of detriment to her ability to function, objectively. (*Id.*).

As to Plaintiff's exertional limitations, Dr. Alexander testified that Plaintiff could lift/carry 10 pounds frequently and 20 pounds occasionally; could stand and walk up to 4 hours out of an 8-hour workday; could sit up to 6 hours out of an 8-hour workday; could never climb ladders, ropes or scaffolds; could occasionally balance, stoop, or kneel; could never reach overhead with the right arm; and should avoid any contact with hazards (machinery, heights). (*PageID##* 124-26). Dr. Alexander clarified before listing Plaintiff's exertional limitations that he did not consider "the frequency of interruption [INAUDIBLE] nausea and vomiting, because that's not an ongoing, constant factor, and secondly, by the pain." (*PageID##* 123-24).

When cross-examined by Plaintiff's counsel, Dr. Alexander reiterated that Plaintiff's perception of her pain was real. (*PageID#* 128). He also reported that her emotional impairment "has a huge impact on her ability to cope with the pain." (*PageID#* 130). He stated that he treated patients with the interaction between physical and mental impairments. He noted, "[w]e have a name for it, we call it the [allodynia] . . . icrsueizure [phonetic] diffuse pain syndrome…which is way beyond just run-of-the mill fibromyalgia." (*Id.*). Dr. Alexander acknowledged that Plaintiff's perception of her physical pain and limitations was greater than the objective physical findings alone. (*PageID##* 130-31).

The ALJ assigned "great weight" to the opinions of the state agency physicians. Dimitri Teague, M.D. offered an opinion regarding Plaintiff's physical functioning on February 8, 2007. (*PageID##* 1022-29). Dr. Teague found that Plaintiff could lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours and sit for 6 hours. (*PageID#* 1023). All postural limitations were occasional and hazards were restricted due to fatigue and pain. (*PageID##* 1024, 1026). Dr. Teague concluded that Plaintiff's statements are credible by nature, but not fully by severity and duration. (*PageID#* 1027).

On May 6, 2009, William Bolz, M.D., reviewed the record at the request of the state agency. (*PageID##* 1520-27). According to Dr. Bolz, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (*PageID#* 1521). Dr. Bolz also found that Plaintiff could stand and/or walk for 6 hours and sit for 6 hours. (*Id.*). Dr. Bolz limited

7

Plaintiff to frequent climbing of ramps and stairs, but no climbing of ladders, rope or scaffolds; frequent stooping, but only occasional kneeling, crouching and crawling. (*PageID#* 1522).  Dr. Bolz concluded:

> Careful consideration has been given to [Miller]'s statements regarding her symptoms and their impact on functioning.  [Miller] reports that she can't lift, carry, push or pull over 5 pounds.  She can't sit or stand for a long time.  CE examiner noted that [Miller] brought four bags of documents weighing possibly more than 20 pounds to exam.  [Miller] was able to move around freely.  She was able to get on and off of exam table w/o difficulty.  Severity of symptoms alleged are not fully supported by objective MER.  [Miller]'s statements are considered only partially credible.

(*PageID#* 1525).  Linda Hall, M.D., reviewed the record on October 28, 2009 and affirmed Dr. Bolz's assessment.  (*PageID#* 1569).

### III.  Administrative Review

#### A.  "Disability" Defined

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.  A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability."  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

8

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

### B. <u>Social Security Regulations</u>

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See PageID##* 75-76; *see also* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can he perform his past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## C. ALJ Iafe's Decision

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. (*PageID#* 76).

At Step 2 of the sequential evaluation, ALJ Iafe concluded that Plaintiff has the severe impairments of depression NOS; anxiety with panic attacks; migraine and muscle tension headaches; right carpal tunnel syndrome status post right release; right shoulder impingement syndrome status post release; cervical and thoracic degenerative disc disease; thoracic syringomyelia; osteoarthritis of the right knee status post total knee replacement; fibromyalgia; and gastroparesis. (*PageID#* 77). The ALJ also determined that Plaintiff's hypothyroidism with hormone replacement; history of dry eye and left eye ptosis; Hepatitis C; and non-Hodgkin's low-grade lymphoma are nonsevere. (*Id.*).

The ALJ concluded at Step 3 that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings. (*Id.*).

At Step 4, ALJ Iafe evaluated Plaintiff's RFC and found that she could perform light work with the following additional limitations: she can only stand and walk for up to 4 hours in an 8-hour workday, in 30-minute increments; can never climb ladders, ropes or scaffolds; can occasionally kneel, crouch and crawl; can frequently climb ramps and stairs; can frequently stoop; is limited to simple tasks with occasional interaction with supervisors, coworker and the general public; can tolerate few workplace changes and cannot perform quota or production based occupations. (*PageID#* 79).

The ALJ concluded at Step 4 that Plaintiff was unable to perform her past relevant work. (*PageID#* 87). ALJ Iafe found that such work exceeds her RFC. (*Id.*).

At Step 5 – based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC – the ALJ concluded that Plaintiff is capable of performing a significant number of jobs in the national economy. (*PageID#* 88).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB. (*PageID#* 89).

**IV. <u>Judicial Review</u>**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of

11

"more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V. **Discussion**

   A. **The Parties' Contentions**

Plaintiff contends the ALJ erred by rejecting the disability opinions provided by her treating pain management physician, Lita Mathai, M.D. *See* Doc. #7 at *PageID#* 445. Plaintiff argues that the ALJ erred in relying on the opinion of the medical expert, Dr. Alexander, in order to find that she could perform work activity. (*Id.*, *PageID#* 1696). According to Plaintiff, the ALJ "erred in relying on Dr. Alexander's opinion to reject Dr. Mathai's opinion of disability, when Dr. Alexander's testimony concerning Ms. Miller's pain supports Dr. Mathai's opinion of disability." (*Id., PageID#* 1698).

Conversely, the Commissioner contends the ALJ's decision denying benefits to Plaintiff is supported by substantial evidence. More specifically, she asserts that the ALJ appropriately considered all medical evidence and incorporated the relevant limitations in his findings. Further, the Commissioner contends that the ALJ properly rejected the opinion of Dr. Mathai, as it was not supported by the evidence in the record. Accordingly, the Commissioner asserts that the ALJ's decision should be affirmed. (Doc. # 10, *PageID*## 1709-12).

### B. Treating Medical Source Opinions

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic

13

techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 581 F.3d at 406, *quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In *Wilson*, 378 F.3d at 546, the Sixth Circuit noted that a treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record.

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," physicians' opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

As to non-treating medical sources, the Regulations do not permit an ALJ to automatically accept or reject their opinions. *See id*. at *2-*3. The Regulations explain, "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d), including, at

14

a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1572(f); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2-*3.

    C.    <u>**Analysis**</u>

Plaintiff's single assignment of error is premised upon an April 2011 report submitted by Dr. Mathai in which she opined that Plaintiff could not perform even sedentary work and was unable to work due to "multiple problems." (*PageID##* 1639-46).

Upon review of the record, the Court concludes the ALJ properly rejected the opinion of Plaintiff's treating pain management specialist, Dr. Mathai, and clearly articulated the requisite "good reasons" for this conclusion. *See* 20 C.F.R. § 404.1527(d)(2). In considering Dr. Mathai's opinion, the ALJ thoroughly reviewed the record and medical evidence before him and concluded the opinion was not "afforded any significant weight" due to the contradictory evidence in the record. (*PageID#* 86).

Contrary to Plaintiff's contentions, the ALJ provided sufficient information to show that he weighed the medical source opinions as the Regulations required. The ALJ declined to credit Dr. Mathai's opinion based on factors permitted by the Regulations. This appeared in the ALJ's finding that Dr. Mathai's opinion "appears on a fill-in-the-blank form, with only marginal notes attached to it. The doctor failed to cite any medical testing results or objective observations to support his conclusions as to the claimant's residual functional capacity." (*PageID#* 86). Moreover, Dr. Mathai left numerous questions on the form unanswered and simply crossed out pages of questions,

15

responding instead with a conclusory statement that Plaintiff is "not able to work." (*PageID##* 1641-45).

The ALJ also found the totality of the medical evidence clearly supports that Plaintiff is not as severely limited as assessed by Dr. Mathai. (*Id.*). As discussed above, Dr. Mathai limited Plaintiff's functional ability to less than sedentary work. (*PageID#* 1646). It is well-settled, however, that the ultimate issue of disability is reserved to the Commissioner, not the treating physician. *Kidd v. Comm'r of Soc. Sec.*, 2008 U.S.App. LEXIS 13675, at * 11, 2008 WL 2564784 (6th Cir. June 25, 2008) (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984)). "Thus, when a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether a claimant is disabled, the ALJ need not accord the opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).

Here, the ALJ also found that Dr. Mathai's opinion regarding Plaintiff's RFC was not entitled to greater weight because it was inconsistent with objective testing or examination findings and the other medical evidence in the record. For example, Dr. Mathai claimed she based her opinion on Plaintiff's history, physical, observations, and medical imaging. (*PageID##* 1642, 1644, 1645). However, during his testimony, the medical expert, Dr. Alexander, noted as to Plaintiff's degenerative disc disease that he could not find evidence for a significant nerve root compression. (*PageID#* 121).

Plaintiff argues that "the ALJ erred in relying on the opinion of the medical expert, Dr. Alexander to find that Ms. Miller could perform work activity." *See* Doc. #7 at

16

*PageID#* 1696.  However, in assessing Plaintiff's impairments and determining functional equivalence, the ALJ reasonably relied on the testimony of Dr. Alexander.  (*PageID#* 87).  A medical expert can offer his own opinion regarding the claimant's condition.  *See* 20 C.F.R. § 404.1527(e)(2).  The ALJ can properly rely on the testimony of a non-examining medical expert in order to make sense of the record.  *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001).  In addition, an ALJ's reliance on the opinion of a non-examining medical expert is proper if the expert's opinion is based on objective reports and opinions.  *See Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994); *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990).

Plaintiff also argues that Dr. Alexander "clearly stated" his RFC finding did not consider the frequency of interruption due to Plaintiff's nausea and vomiting.  (Doc. #7 at *PageID##* 1696-97).  However, the ALJ noted the following in his decision:

> any gastrointestinal impairment causing weight loss with a Body Mass Index of less than 17.50 meets the listings.  The claimant weighs approximately 150 pounds and is 60 inches tall, giving her a Body Mass Index (BMI) of 29.3.  This is considered overweight for the claimant's height.  Therefore, she does not meet the listing for gastrointestinal weight loss.

(*PageID##* 78).  In addition, an April 2008 esophagogastroduodenoscopy revealed gastroparesis, for which Plaintiff was started on the medication, Reglan.  (*PageID#* 1390).  By December 2008, it was noted that Plaintiff's nausea had resolved since she discontinued use of a Duragesic patch for pain; her heartburn was fairly well controlled with Acephex; and her abdomen was soft and nontender.  (*PageID#* 1404).

17

> The ALJ further addressed Plaintiff's nausea and vomiting as follows:
>
> In terms of the claimant's alleged nausea and vomiting from gastroparesis, records do not support the severity and frequency alleged by the claimant. Records do confirm the claimant has documented gastroparesis (Exhibit 40F/8). Symptoms from this diagnosis include reflux, nausea and vomiting, and constipation. The claimant's symptoms of constipation are exacerbated by her use of narcotic pain medications. In September 2008, she reported nausea occurring only once a week and no vomiting since her last visit (Exhibit 40F/21). In December 2008, the claimant reported complete resolution of her nausea, and that her reflux was fairly well controlled with Acephex (Exhibit 40F/22). In March of 2009, she had an increase in nausea and vomiting, reporting vomiting every other day (Exhibit 48F). The claimant noted that her increase in vomiting coincided with constipation; the claimant was prescribed Amitiza for constipation. In July 2009, she reported an improvement with only occasional nausea and vomiting once in the last week (Exhibit 48F/3). Primary care records from November 2009 to January 2011 show the claimant denied any gastro intestinal symptoms, including food intolerance, abdominal pain, nausea, vomiting, bloating or constipation (Exhibits 49F and 57F). Overall, the records confirm only a short period of frequent vomiting between March 2009 and July 2009. Otherwise, the claimant appears to have only intermittent symptoms from this disorder.

(*PageID#* 84). When concurring with Dr. Alexander's testimony, the ALJ noted that Plaintiff was receiving appropriate treatment for fibromyalgia and her gastroparesis. (*PageID#* 87). The ALJ gave substantial weight to the testimony of Dr. Alexander for the following reasons: he had an opportunity to review Plaintiff's entire medical record and listen to her testimony; Plaintiff's counsel was given a chance to cross-examine him; and Dr. Alexander specializes in rheumatology and was well qualified to estimate Plaintiff's limitations from her fibromyalgia. (*Id.*). The ALJ adopted Dr. Alexander's limitations, and further explained that they were consistent with the opinions of Drs. Teague, Bolz, and Hall (the state agency reviewing physicians). (*PageID##* 86-87).

Plaintiff has not established the ALJ erred as a matter of law in weighing these medical source opinions or that substantial evidence did not support the opinions of these medical sources. *See, e.g., Rogers*., 486 F.3d at 234; *Wilson*, 378 F.3d at 541. Without such a showing, the Court is not free to re-weigh the medical source opinions or to resolve other evidentiary conflicts. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)("there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

For the reasons stated above, Plaintiff's Statement of Errors (Doc. #7) lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be affirmed; and

2. The case be terminated on the docket of this Court.

January 29, 2014

                                          s/Sharon L. Ovington
                                              Sharon L. Ovington
                                Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).